# In the
# United States Bankruptcy Court
### For the Northern District of Illinois

| | |
|---|---|
| IN RE:<br><br>**DIONNA D. RICE**,<br><br>　　　　DEBTOR. | CASE NO. 18-08359<br>EASTERN DIVISION<br>CHAPTER 13<br><br>HON. JACK B. SCHMETTERER<br><br>HEARING DATE:  NOV. 6, 2018<br>HEARING TIME:  10:30 A.M. |

# CITY OF CHICAGO'S
# AMENDED RESPONSE TO DEBTOR'S
# MOTION FOR SANCTIONS

**Mark Flessner**
Corporation Counsel

Charles A. King
Assistant Corporation Counsel
**CITY OF CHICAGO, DEPARTMENT OF LAW**
121 N LaSalle St., Ste. 400
Chicago, IL 60602
Tel: (312) 742-0019
Email:  chuck.king@cityofchicago.org

# INTRODUCTION

Debtor Dionna D. Rice seeks sanctions from the City of Chicago ("City") based on an alleged willful violation of the automatic stay, i.e., the City's failure to release her impounded car after she filed her Chapter 13 case. However, the City did not violate the stay because the Debtor herself proposed a plan which provided that the City could retain the car, and the City merely acted consistently with the Debtor's proposed, and then confirmed, plan.

And even if the City's retention of the Debtor's car did constitute a violation of the stay, it was not a willful violation entitling the Debtor to damages, because of both the contents of the Debtor's plan and the legal authority supporting the City's position at the time that the relevant events took place. Accordingly, the Debtor's Motion for Sanctions ("Motion") should be denied.

# FACTS

The Debtor's car was impounded on February 4, 2018. At that time the Debtor had incurred 49 Chicago Municipal Code violations resulting in unpaid fines, penalties and fees of over $13,000.00. *See* Claim 2-2. On March 22, 2018, after her car had been in the pound for almost seven weeks, the Debtor filed her petition commencing this case.

At the same time as her petition, the Debtor filed a proposed plan (Docket 2). The plan provided in Section 3.2 that the City was a secured creditor and proposed to pay the City's claim in installments over the plan term. The plan was subsequently amended to change the

1

dollar amount to match the City's filed claim, *see* Docket 20, but the City's claim was listed as a secured claim under Section 3.2 from the time of filing of the case through confirmation of the amended plan.

Section 3.2 of the Debtor's original and confirmed plans includes the following provision:

> The holder of any claim listed below as having value in the column headed *Amount of secured claim* will retain the lien on the property interest of the debtor(s) or the estate(s) until the earlier of:
>
> (a) payment of the underlying debt under nonbankruptcy law, or
>
> (b) discharge of the underlying debt under 11 U.S.C. § 1328, at which time the lien will terminate and be released by the creditor.

The City's claim did have a value listed in the referenced column, so that provision applied to the City's claim.

At the time these events took place, the Court of Appeals had not issued its ruling in *In re Fulton*, 926 F.3d 916 (7th Cir. 2019), *petition for cert. filed* (U.S. Sept. 18, 2019) (No. 19-357), and would not for more than a year. There had not even been any suggestion at that point that the City could retain a possessory lien on a car without maintaining possession of the car. Thus, the Debtor's proposed plan, based on the language quoted above, provided for the City to retain its lien, which at that time could only have been interpreted to mean its possessory lien, i.e., possession of the car. The City's policy, nevertheless, was to release vehicles upon confirmation of a plan that paid the City's secured claim in full in regular monthly payments.

On June 6, 2018, the Court confirmed the Debtor's amended plan

(Docket 25), which still provided for the City to retain its possessory lien. Counsel for the Debtor, aware of the City's policy, requested release of the car. However, Debtor's counsel had not consulted with the City prior to confirmation of the plan, and the plan that was confirmed did not meet the City's requirements. The plan contained a fee jumping provision: a special term providing that payments to the City would not commence until February of 2020 (*see* Docket 20, § 8.1), which meant that until then the great majority of the money paid into the case by the Debtor would go to her attorneys, towards their priority claim for fees—the fees "jump over" the claim of a secured creditor, who would otherwise be entitled to payments from the beginning of the case. In effect, such a provision transfers the risk of a failed case from the attorneys (who have the best perspective to know whether a case is viable) to the secured creditor.

The City would not agree to release of a vehicle if the plan contained a fee jumping provision, which has been held improper by many courts, including by three judges in this district.[1] The City indicated that if the plan was modified to remove the fee-jumping term, the City would release the car. Debtor's attorneys, putting their own interests ahead of their client's, refused, and instead filed the Debtor's Motion on July 30, 2018. Subsequently, upon determining that it was in fact receiving the payments set in the plan, the City did release the Debtor's car. The release was processed on August 30, 2018, and the Debtor was offered the return of her car.

---

[1] *See In re Williams*, 583 B.R. 453 (Bankr. N.D. Ill. 2018) (Hunt, J.); *In re Miceli*, 587 B.R. 492 (Bankr. N.D. Ill. 2018) (Lynch, J.); and *In re Shelton*, 592 B.R. 193 (Bankr. N.D. Ill. 2018) (Barnes, J.).

# ARGUMENT

**1. The Debtor is bound by her plan.**

Section 1327(a) of the Bankruptcy Code provides that "[t]he provisions of a confirmed plan bind the debtor[.]" 11 U.S.C. § 1327(a). So at least from confirmation on, the Debtor was bound by her own plan which (a) acknowledges the secured status of the City's claim, and (b) provides that the City retains its possessory lien. She cannot claim that the City's retention of the car was improper at that point.

Prior to confirmation, the Debtor's own actions created an ambiguity which should not be the basis for punishment of the City. When the case was filed, the Debtor's counsel faxed a notice that included what appears to be a boilerplate request for release of a car—it refers to "a Motion for Sanctions against your company," so it was clearly not directed specifically to the City. *See* Debtor's Motion, Exhibit A. At the same time, the Debtor had filed a proposed plan that provided that the City would retain its possessory lien. At no time prior to confirmation of the plan did the City hear from Debtor's counsel regarding either the plan or release of the car—it's clear that Debtor's counsel understood that the City would retain the car pending confirmation of the plan. And as noted, the confirmed plan retained the provision preserving the City's possessory lien.

So the City, which acted at all times in conformity with the Debtor's proposed and confirmed plan, cannot be found to have engaged in con-

duct meriting sanctions. The Debtor's filings said that the City could keep possession of the car. The Debtor cannot now say that by doing so, the City violated the stay.

## 2. The City did not willfully violate the automatic stay.

Even if the City's retention of the car under the circumstance of this case could be found to violate the stay, any such violation cannot be considered willful.

The plain text of the Bankruptcy Code provides that the court shall award damages to an individual "injured by any *willful* violation of the stay[.]" 11 U.S.C. § 362(k) (emphasis added). The word "willful" modifies violation, and therefore it cannot mean merely a deliberate or intentional act that leads to a violation. *See Internal Revenue Serv. v. Murphy*, 892 F.3d 29, 46 (1st Cir. 2018) (Lynch, J. dissenting) (*citing Kawaauhau v. Geiger*, 523 U.S. 57, 57-58 (1998).[2] A willful violation simply cannot mean strict liability for violating the stay.

The word "willful" is a "word the law typically does not associate with strict liability," and is usually "dependent on the context in which it appears." *Taggar v. Lorenzent*, 139 S. Ct. 1795, 1804 (2019). In the civil liability context, the Supreme Court has consistently held that

---

[2] The Supreme Court's analysis of § 523(a)(6) maps perfectly onto § 362(k). The Court has held: "The section's word 'willful' modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely . . . a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead 'willful acts that cause injury' or selected an additional word or words, i.e., 'reckless' or 'negligent,' to modify 'injury.'" *Kawaauhau*, 523 U.S. at 57–58.

5

"willful" means both the knowing (or intentional) violation of the law, or a careless (or reckless) disregard for whether the act violates the law. *See Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 57 (2007). Willful acts, however, do not include those taken with an objectively reasonable basis for believing the act does not violate the law. Certainly, individuals with an objectively reasonable basis to believe they are not violating the law are not knowingly violating that law, nor are they acting with careless or reckless disregard.

But § 362(k) fits within an even more specific context in the broad category of civil liability. The automatic stay under § 362 is a statutorily imposed injunction prohibiting a number of acts. *See Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 878 (7th Cir. 2001); *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 912 (7th Cir. 2001). The "regime under § 362 tracks that for other proceedings in the nature of contempt of court" for violating an injunction. *Randolph*, 368 F.3d at 731. Therefore, the meaning of willful must be read in the more specific context of civil liability for contempt. The Supreme Court recently held that "civil contempt should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct. This standard reflects the fact that civil contempt is a severe remedy, and that principles of basic fairness require that *those enjoined receive explicit notice of what conduct is outlawed* before being held in civil contempt[.]" *Taggart,* 139 S. Ct. at 1801-02 (internal citations and quotations omitted) (emphasis added). Therefore, the word willful in the context in which Congress used it in § 362(k) cannot be akin to the strict liability that the Debtor would like to impose.

6

Additionally, the Seventh Circuit has never held that strict liability applies in the § 362(k) context. The court of appeals has held that "[a] 'willful violation' does not require a specific intent to violate the automatic stay." *In re Price*, 42 F.3d 1068, 1071 (7th Cir. 1994). But as stated above, the word "willful" in the civil liability context, does not require intent to violate the law, but only requires a careless or reckless disregard. *See Safeco Ins. Co. of Am.*, 551 U.S. at 57. *Price*, therefore, just applies the standard definition of the term. The court of appeals made that clear when it held that the government willfully violated stay when it "declined to intervene," "despite the several pleas to halt further collection actions[.]" *In re Price*, 42 F.3d at 1071. The government clearly showed a reckless disregard for the stay. It acted willfully.

Citing *Price*, the circuit court applied the same standard (albeit phrased a bit differently) in *In re Radcliffe*, 563 F.3d 627, 631 (7th Cir. 2009), stating that a willful violation occurs when "the creditor takes questionable action despite the awareness of a pending bankruptcy proceeding." This, again, merely applies the normal meaning of "willful" in the civil liability context: acting with careless or reckless disregard for the law, *i.e.*, questionably. The circuit court could not have meant "questionable action" to mean any action that may or may not violate the stay. Questionable is akin to carelessness, which is the correct standard to apply in this context.

There certainly are lower courts that have held that any intentional act done with the mere knowledge of the bankruptcy is willful, no matter how objectively reasonable the belief was that the stay did not ap-

7

ply. But that same standard was recently rejected by the Supreme Court in *Taggart* in the context of a discharge injunction violation under § 542. 139 S. Ct. 1795. Prior to that decision, the vast majority of, if not all, courts applied the same standard to discharge injunction violations as they did to stay violations. This case law so holding is extensive, including in this court. *See In re Leber,* 134 B.R. 911, 917 (Bankr. N.D. Ill. 1991) (The standard for a stay violation and discharge violation are the same); *Behrens v. Woodhaven Ass'n*, 87 B.R. 971, 976 (Bankr. N.D. Ill. 1988) (same). Additionally, Congress has linked the two to the same "willful violation" standard with respect to the IRS under 26 U.S.C. § 7433(e)(1) ("If…the [IRS] *willfully violates* any provision of section 362…or 524…such taxpayer may petition the bankruptcy court to recover damages against the United States."). This shows Congress also understood them to be applied the same way.

The strict liability standard, not yet expressly adopted by this Circuit, has not been accepted by panels in the First, Third, Fifth, and Sixth Circuits either. These courts have "held that mere knowledge of a stay was insufficient to show a 'willful violation.'" *Murphy*, 892 F.3d at 48 n. 13 (Lynch, J. dissenting); *see also*, *Vahlsing v. Commercial Union Ins. Co.*, 928 F.2d 486, 490 (1st Cir. 1991) ("Violation of the stay, in other words, is not a strict liability tort."). The First Circuit held in *In re Nelson*, 994 F.2d 42, 45 (1st Cir. 1993), that it was "reasonable for [the creditor] to believe that the property was not part of the bankruptcy estate" and that this was "so obvious that [the creditor's] actions could not have been willful that [the court found the] appeal frivolous." *Id.* In *Matter of Sherk,* 918 F.2d 1170, 1178 (5th Cir. 1990), *ab-*

8

*rogated on other grounds by Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992), the Fifth Circuit held that a creditor did not act willfully under § 362(k) when she pursued a solid legal argument that certain property was not property of the estate, but ultimately lost. *Id.* It reversed the award of sanctions. *Id.* The Sixth Circuit in *In re Merchant*, 958 F.2d 738, 742 (6th Cir. 1992) held that a university violated the stay by not releasing transcripts, but also held that the violation was not willful because university confused exceptions to the discharge under § 523 with exceptions to the stay. *Id.* Additionally, the Third Circuit has held that subjective "good faith" that a stay does not apply will not save a creditor, but that following "persuasive legal authority" will. *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1088 (3d Cir. 1992). In the end, while none of these circuit courts have used the Supreme Court's words from *Taggart* of "objectively reasonable basis," in effect, that is the test that they have applied to circumstances like the one here.

Given all of this, and the Supreme Court's recent admonishment that "the word 'willful,' [is] a word the law typically does not associate with strict liability," the standard to be applied is one of an "objectively reasonable basis" for believing the stay did not apply, which the City certainly had here.

The City here had obtained a ruling from the Bankruptcy Court prior to this case holding that it was not violating the stay by maintaining possession of a vehicle after the case was filed. *See In re Avila*, 566 B.R. 558 (Bankr. N.D. Ill. 2017). While subsequently other courts ruled against the City, those decisions were on appeal; meanwhile, while this case was pending, the City received another ruling in its fa-

9

vor, this time from the District Court. *See City of Chicago v. Kennedy*, 2018 WL 2087453 (N.D. Ill., May 4, 2018). The City had, therefore, legal authority that it was acting within the confines of the law, it had a legally meritorious argument that it was not violating the stay, and it certainly was not acting in reckless or careless disregard for the stay. Beyond fitting within the standard announced in *Taggart*, this falls squarely within the reasoning of *Matter of Sherk*, 918 F.2d at 1178.

Obviously, the Court of Appeals' opinion in *Fulton* cleared up the ambiguities and disputes surrounding application of the stay exception in § 362(b)(3), upon which *Avila* was predicated. However, determining the willfulness of the City's conduct cannot be based on hindsight. At the time of the events underlying this matter, the issues were not resolved, and the City had authority to support its position.

And if the unresolved legal issue were not enough, as noted above, the Debtor had filed a plan that provided for the City to retain its possessory lien. Under those circumstances, it cannot be said that the City acted with "reckless disregard" of the stay.

Accordingly, the City should not be found to have willfully violated the stay, and the Motion should be denied.

## CONCLUSION

For both of the foregoing reasons, the Debtor's Motion should be denied.

DATED: OCTOBER 16, 2019          RESPECTFULLY SUBMITTED,

**THE CITY OF CHICAGO**

Mark Flessner
Corporation Counsel

By: /s/ Charles A. King
Assistant Corporation Counsel

Charles A. King
Assistant Corporation Counsel
**CITY OF CHICAGO, DEPARTMENT OF LAW**
Chicago City Hall
121 N LaSalle St., Ste. 400
Chicago, IL 60602
Tel: (312) 742-0019
Email: chuck.king@cityofchicago.org

## CERTIFICATE OF SERVICE

I, Charles A. King, an attorney, hereby certify that on October 16, 2019, I caused a copy of this Amended Response to be served via the court's electronic noticing system for Registrants on those designated to receive such service as provided on the attached Service List.

/s/ David P. Holtkamp

## SERVICE LIST

**Registrants**
(Via CM/ECF)

- **Thomas G Stahulak**   tom@getfiled.com
- **Linda Taniguchi**   tom@getfiled.com
- **Tom Vaughn**   ecf@tvch13.net, ecfchi@gmail.com
- **Patrick S Layng**   USTPRegion11.ES.ECF@usdoj.gov