**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Case No. 18 BK 08359 |
| DIONNA D. RICE, | Chapter 13 |
| Debtor. | Hon. Jack B. Schmetterer |

**MEMORANDUM OPINION ON:**
**(1) DEBTOR'S MOTION FOR SANCTIONS [DKT. NO. 30]; AND**
**(2) THE CITY OF CHICAGO'S MOTION TO ANNUL THE AUTOMATIC STAY**
**[DKT. NO. 57]**

Debtor Dionna D. Rice ("Debtor") seeks sanctions against the City of Chicago (the "City") for violating the automatic stay by refusing to return her impounded vehicle after she filed for bankruptcy. In turn, the City seeks annulment of the automatic stay.

For reasons articulated below, Debtor's Motion for Sanctions (the "Motion for Sanctions") will be **GRANTED** and the City's Motion to Annul the Automatic Stay (the "Motion to Annul") will be **DENIED** by separate order entered concurrently herewith.

**BACKGROUND**

The facts in this case are simple and undisputed by the parties. [Dkt. No. 104]. Debtor's vehicle, a 2007 Pontiac G6, was impounded by the City on February 4, 2018. Then, while the City still retained possession of Debtor's vehicle, on March 22, 2018, Debtor filed for bankruptcy. On the same day, Debtor faxed notice of the bankruptcy alongside a demand for release of the vehicle to an agent of the City. Nonetheless, the City did not release the vehicle then.

Debtor's Chapter 13 Plan (the "Plan") was confirmed on June 6, 2018, without objection by the City.[1] On the same day, Debtor's counsel again sought release of the vehicle by the City through email. But, Debtor's request was again denied by the City, who instead offered to release the vehicle if Debtor modified her confirmed Plan.[2]

On July 30, 2018, Debtor filed the present Motion for Sanction, seeking actual damages, including costs and attorneys' fees, and punitive damages[3] for violating the automatic stay. On August 30, 2018, the City released Debtor's car. On January 3, 2019, the City filed the present Motion to Annul. On January 10, 2019, the matter was held in abeyance pending the decision in

---

[1] Debtor's Plan provided for payment of the City's secured $13,936.80 claim by payments of $232.28 per month until February 2020, at which time the payments would be increased to $263.15 per month.
[2] The City sought modification of the confirmed Plan to provide for equal monthly payment amounts throughout the term of the Plan.
[3] No argument as to why punitive damages should be imposed in this case was ever presented.

1

*In re Fulton*. 926 F.3d 916 (7th Cir. 2019), *cert. granted sub nom. City of Chicago, Illinois v. Fulton*, 140 S. Ct. 680 (2019). In October through November of 2019, further briefs were filed, and oral argument was held on December 12, 2019.

## JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer bankruptcy proceedings to a bankruptcy judge under 28 U.S.C. § 157 and 28 U.S.C. § 1334, and this proceeding was thereby referred here by Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. "[A]ny motion seeking relief from, or redress regarding, the automatic stay, by definition arises under the Bankruptcy Code and is therefore a core proceeding within this court's statutory and constitutional authority." *In re Klarchek*, 508 B.R. 386, 389 (Bankr. N.D. Ill. 2014) (Barnes, J.); 28 U.S.C. § 157(b)(2)(A), (G). Even where a bankruptcy has been dismissed, which occurred in this case [*see* Dkt. No. 112], courts still retain a "clean-up" jurisdiction to adjudicate controversies between parties unresolved by a final judgment. *In re Sweports, Ltd.*, 777 F.3d 364, 367 (7th Cir. 2015).

## DISCUSSION

### A. The City's Retainment of the Vehicle Was a Violation of the Automatic Stay

The filing of a bankruptcy petition creates a bankruptcy estate consisting of all of the debtor's legal or equitable interests in property. 11 U.S.C. § 541(a)(1). This petition also serves as a stay of certain acts performed by creditors to collect on debts owed by the debtor, including acts to exercise control over property of the estate. 11 U.S.C. § 362(a)(3). "The automatic stay is a self-executing provision of the Bankruptcy Code and begins to operate nationwide, without notice, once a debtor files a petition for relief." *In re Swindle*, 584 B.R. 259, 264 (Bankr. N.D. Ill. 2018) (Cox, J.).

The Bankruptcy Code also contains a compulsory turnover provision that requires any entity in possession or control of property of the estate that the trustee may use, sell, or lease to deliver that property to the trustee, subject to certain exceptions. 11 U.S.C. §542(a). In *Thompson v. Gen. Motors Acceptance Corp., LLC*, the Seventh Circuit held that creditors who exercised control over vehicles belonging to debtors by possessing them before the bankruptcy was filed must turnover those vehicles upon the request of a debtor once a bankruptcy has been filed. 566 F.3d 699, 701 (7th Cir. 2009). In turn, creditors may then seek adequate protection from the debtor

or, in the alternative, file an emergency motion for relief from the automatic stay and attempt to show why they should be entitled to retain the vehicles that were seized prepetition. *Id.* At 707.

*Thompson* was originally the law of the circuit at the time of the City's actions in this case. The continued possession of Debtor's vehicle was in contravention of the *Thompson* ruling. The City attempts to circumvent this by arguing that: (1) it did not exercise control over property of the estate merely by "passively" retaining the vehicle; (2) the stay is excepted under Section 362(b)(3) so the City may retain the vehicle to maintain perfection of its claimed possessory lien; and (3) the stay is excepted under Section 362(b)(4) for the City, a governmental unit, to enforce its police and regulatory power. 11 U.S.C. § 362(b)(3), (b)(4). But, these arguments were rejected in *Fulton*, which reaffirmed *Thompson*. *Fulton*, 926 F.3d at 924, 927-31.

The City also asserts that *Fulton* is not applicable as it was not yet decided when the actions of this case took place. However, this case was held in abeyance pending the Seventh Circuit's decision on the law. "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of [cases] on its docket." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). No challenge was made to the order holding this matter in abeyance. Furthermore, regardless of *Fulton*, the fact remains that the City's actions were a violation of the automatic stay as laid out in *Thompson*. Its claims that it had a valid policy in not releasing vehicles to preserve its claimed possessory lien, supported, in part, by a favorable decision in one bankruptcy case and one district court case, nonetheless runs afoul of the Seventh Circuit's mandate in *Thompson* as well. The City's refusal to release Debtor's vehicle, once Debtor filed bankruptcy and made a demand for the vehicle, was undoubtedly a violation of the automatic stay. *Thompson*, 566 F.3d at 701.

### B. The City's Action was Willful

The City next argues that even if it did violate the stay, it cannot be subject to sanctions since that violation was not willful. Indeed, only willful violations of the automatic stay are subject to sanctions. 11 U.S.C. 362(k)(1). "A willful violation does not require specific intent to violate the stay; it is sufficient that the creditor takes questionable action despite the awareness of a pending bankruptcy proceeding." *In re Radcliffe*, 563 F.3d 627, 631 (7th Cir. 2009).

The City argues that the standard for determining willfulness cannot mean strict liability for violating the automatic stay, but rather should be based on an objectively reasonable basis for believing the automatic stay did not apply, citing *Taggart v Lorenzent*, 139 S. Ct. 1795, 1804

3

(2019) (civil contempt for violations of a discharge order requires that there is no fair ground of doubt as to whether the order barred the creditor's conduct). But, in *Taggart*, the Supreme Court specifically declined to address whether the word "willful" in the context of the automatic stay provision should be based on the same standard as determining civil contempt for violations of a discharge order. *Id.* at 1804 ("We need not, and do not, decide whether the word 'willful' [in the automatic stay context] supports a standard akin to strict liability."). Until the Supreme Court holds otherwise,[4] the Seventh Circuit's standard remains the law of this circuit.

It is clear that the City took questionable action. It is undisputed that the City had knowledge of the bankruptcy proceeding. The City has stipulated that notice of the bankruptcy was faxed to its agent on March 22, 2018. The City's failure to release property of the estate was a deliberate act. *See Thompson*, 566 F.3d at 708-07. By refusing to return Debtor's vehicle for over 160 days with knowledge of the existence of Debtor's bankruptcy and the mandate under *Thompson*, the City acted willfully in violating the automatic stay.

### C. Annulment of the Automatic Stay is Not Appropriate

The City requests annulment of the automatic stay for equitable considerations. In granting relief from the automatic stay, Section 362(d) allows for annulment of the stay for "cause." 11 U.S.C. § 362(d)(1). Essentially, annulment asks the court to approve post-petition action which violated the automatic stay if "cause" exists to support annulment. *In Re Szyszko*, 234 B.R. 408, 412 (Bankr. N.D. Ill. 1999); *see also, e.g.*, *In re Myers*, 491 F.3d 120, 127 (3d Cir. 2007) ("[A]ctions in violation of the stay, although void (as opposed to voidable), may be revitalized in appropriate circumstances by retroactive annulment of the stay."). A bankruptcy court's decision to annul the automatic stay pursuant to 11 U.S.C § 362(d) is committed to the Court's discretion. *In re Brittwood Creek, LLC*, 450 B.R. 769, 774 (N.D. Ill. 2011) (citing *In re C & S Grain Co., Inc.*, 47 F.3d 233, 238 (7th Cir. 1995)).

The City admits that it had knowledge of the bankruptcy; therefore, any argument that the City did not have knowledge of the applicability of the automatic stay and the application of the automatic stay would cause unfair prejudice is without merit. Rather, the City argues that the stay should be annulled because Debtor is a reckless driver (and has supposedly incurred a series of

---

[4] Given that the Supreme Court recently granted the City's writ of certiorari for *Fulton*, perhaps clarification will be provided on this issue in the future. *See City of Chicago, Illinois v. Fulton*, 140 S. Ct. 680 (2019).

4

post-petition traffic tickets)[5] and thus it has a strong interest in enforcing traffic ordinances for the safety and convenience of the public. [Dkt. No. 57, at 1]. However, no evidence demonstrating that Debtor is a dangerous driver was ever introduced into the record. An evidentiary hearing was held on December 12, 2019. The order setting the evidentiary hearing required the parties to deliver to chambers exhibits to be introduced. [Dkt. No. 103]. None was provided, apart from a "Joint Stipulation of Facts Material to Pending Motions," which was filed on the docket. [Dkt. No. 104]. In that document, no stipulation is found stating that Debtor is a reckless driver. Rather, as stated in the joint stipulation, the parties "waive their opportunity to submit additional testimonial or documentary evidence in support of or opposition to the pending motions." *Id.* at 2. Moreover, at the evidentiary hearing, both parties were individually asked whether any additional evidence (other than the joint stipulation) would be offered. In response, both parties declined to do so and rested. Therefore, because no evidence was introduced into the record to substantiate the City's position that Debtor is a reckless driver, the City's unsupported argument will not be considered. Accordingly, no cause exists to support annulment.

### D. Measure of Damages

An individual subject to a willful violation of the automatic stay shall recover actual damages, including attorneys' fees and costs. 11 U.S.C. § 362(k)(1). Here, the parties have agreed to and stipulated that Debtor suffered actual damages in the amount of $1,380 in lost wages, $787.50 in vehicle repair costs, and reasonable attorney fees. [Dkt. No. 104]. However, the parties dispute the proper amount of reasonable attorney fees to be awarded. "When determining the reasonableness of attorneys' fees, a 'lodestar' analysis, which multiplies the attorneys' reasonable hourly rates by the number of hours reasonably expended, is typically the starting point." *A. Bauer Mechanical, Inc. v. Joint Arbitration Bd. of Plumbing Contractors' Ass'n and Chicago Journeymen Plumbers' Local Union 130, U.A.*, 562 F.3d 784, 793 (7th Cir. 2009).

To begin the analysis on the proper attorneys' fees, the hourly rate must be determined. To determine an attorney's reasonable hourly rate, courts generally look to the "market rate" for the work performed, i.e. "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 554–55 (7th Cir. 1999). The burden of proof is on the party seeking the

---

[5] The alleged tickets are not evidence of reckless behavior. They are charges. No conviction was provided demonstrating that Debtor was found liable for the tickets.

5

fees. *Id.* at 554. Then, once the proponent provides evidence establishing that rate, the burden shifts to the other side to demonstrate why a lower rate should apply. *Id.* at 554-55.

Here, Debtor's attorney has introduced evidence that $200 per hour should be awarded. In response, the City has raised an objection arguing, under Section 106(a), that a judgment imposed against a governmental unit like itself for a violation of stay must be consistent with the limitation within 28 U.S.C. § 2412(d)(2)(A). *See* 11 U.S.C. § 106(a)(3). Under Section 2412(d)(2)(A), attorney fees are generally limited to a maximum of $125 per hour. 28 U.S.C. § 2412(d)(2)(A). In this case, at the evidentiary hearing, Debtor did not dispute the application of the statutory cap. Accordingly, since the City's objection is unchallenged, the Court will decline to rule on the non-disputed issue of whether the statutory cap of Section 106(a) applies. Hence, the billing rate by Debtor's attorney shall be reduced to $125 per hour.

The parties have also been unable to agree on the proper amount of reasonable fee hours. Here, Debtor's attorneys have listed hours totaling 68.1 hours. [Dkt. No. 106]. The City challenges 23.8 of these claimed hours as being related solely to other matters in the bankruptcy proceeding. "Hours spent are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004).

Upon review, the City is incorrect as to the allegedly "unnecessary" nature of hours spent by counsel for Debtor on review of *Fulton* and work and review as to the City's Motion to Annul. The *Fulton* decision and the Debtor's response to the City's Motion to Annul are clearly relevant to the sanctions dispute. The *Fulton* opinion was central to many issues in this case. Had the City succeeded on its Motion to Annul, the Debtor's Motion for Sanctions would be moot. However, of the remaining disputed 13.7 hours, as no evidence has been presented by Debtor's counsel to demonstrate that the following hours were indeed related to the Motion for Sanctions, they will be disallowed. *See McNabola v. Chicago Transit Authority*, 10 F.3d 501, 518 (7th Cir. 1993) (the party seeking attorney fees bears the burden of proving the reasonableness of the number of hours worked). Therefore, the disallowed hours are as follows:

| Date | Brief Description | Hours |
| --- | --- | --- |
| 11/25/18 | Review claims; draft motion to modify plan | 1.0 |
| 11/26/18 | Meet w/ client re motion to modify plan | 0.5 |

6

| Date | Description | Hours |
|---|---|---|
| 11/26/18 | Review, file amended schedules | 0.8 |
| 12/5/18 | Review motion to dismiss | 1.0 |
| 12/6/18 | Draft and file amended payroll order | 0.2 |
| 12/11/18 | Prepare notes and e-mail coverage counsel | 0.5 |
| 12/12/18 | Court re motion to dismiss | 0.5 |
| 12/18/18 | Prepare notes and e-mail coverage counsel | 0.2 |
| 12/19/18 | Court re motion to modify plan | 0.5 |
| 12/23/18 | E-mail debtor re motion to dismiss | 0.1 |
| 12/23/18 | Draft response to motion to dismiss | 1.5 |
| 12/26/18 | Review and file response to motion to dismiss | 0.8 |
| 2/6/19 | Court re trustee motion to dismiss | 0.5 |
| 6/17/19 | Review trustee motion to dismiss | 0.2 |
| 7/23/19 | Prepare notes and e-mail coverage counsel | 0.2 |
| 7/24/19 | Court re trustee's motion to dismiss | 0.5 |
| 8/1/19 | Review trustee's motion to dismiss for failure to turn over tax refund. | 0.2 |
| 8/27/19 | Prepare notes and e-mail coverage counsel | 0.2 |
| 8/28/19 | Court re trustee's motion to dismiss | 0.5 |
| 10/29/19 | Review motion to dismiss and draft answer | 3.0 |
| 10/30/19 | Review and file answer to motion to dismiss | 0.8 |

In total, this brings the total reasonable attorney hours from 68.1 hours to 54.4 hours. At a rate of $125 per hour, the attorney fees total $6,800. Combined with the agreed to damages of $2,167.50 for lost wages and vehicle repair costs, Debtor is entitled to recover $8,967.50.

## CONCLUSION

For the foregoing reasons, Debtor's Motion for Sanctions will be **GRANTED** and the City's Motion to Annul will be **DENIED** by separate order entered concurrently herewith.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 21 day of April 2020